**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **CANDYCE JONES,** | ) | |
| | ) | |
| **Movant,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:12-cv-599** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | **Judge Sharp** |
| | ) | |
| **Respondent.** | ) | |

<u>**MEMORANDUM OPINION**</u>

Before the Court is movant Candyce Jones's *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence (ECF No. 1), which was filed along with a supporting memorandum of law (ECF No. 3). The United States has filed its response in opposition to the motion.

**I.      Factual Background and Underlying Proceedings**

Jones was indicted on August 12, 2009 in Case No. 3:09-cr-180 on eight counts of health-care fraud in violation of 18 U.S.C. § 1347; one count of money laundering in violation of 18 U.S.C. § 1957; and two counts of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). The indictment also included forfeiture allegations related to the fraud and money-laundering charges.

Attorney Stephen Grace represented Jones prior to her indictment and for a period of time after Jones was indicted. He filed a motion to withdraw as counsel on October 1, 2010, on the basis that Jones had retained new counsel by then, attorney Cynthia Fort. Grace's motion to withdraw was granted on October 4, 2010.

The criminal case was initially assigned to Judge William J. Haynes (now Chief Judge Haynes). On January 14, 2011, pursuant to a plea agreement, Judge Haynes accepted Jones's plea of guilty to one count of health- care fraud and one count of money laundering. (Case No. 3:09-cr-180, ECF No. 47.) In accordance with the plea agreement, the government filed motions for forfeiture, which Judge Haynes granted on April 21, 2011. Prior to sentencing, however, Judge Haynes recused himself, and the case was randomly reassigned to this Court. On July 22, 2011, Jones was sentenced to a thirty-six-month term of imprisonment as to each count to which she pleaded guilty, to run concurrently, to be followed by

three years of supervised release, plus a $200 special assessment and restitution in the amount of $654,653.87. The Court recommended that Jones be incarcerated at the federal medical facility at Lexington, Kentucky, in light of her mental and physical health needs.

## II.     Jones's § 2255 Motion

Jones filed the present Motion to Vacate on June 11, 2012, asserting that:

(1)  she was deprived of her right to effective counsel as guaranteed by the Sixth Amendment to the United States Constitution, when her first attorney, Stephen Grace, failed to turn over patient files to the U.S. Attorney that would have decreased Jones's sentence and the amount of restitution owed;

(2)  she was deprived of her right to due process by the decision of the undersigned not to recuse himself from presiding over the movant's sentencing proceedings;

(3)  she was deprived of her constitutional rights by the prosecutor's breach of the plea agreement, which constituted prosecutorial misconduct;

(4)  her sentence was substantively and procedurally unreasonable;

(5)  her constitutional rights were violated because she was not mentally sound at the time of sentencing, and she was deprived of the right to an examination by a competent psychiatrist prior to sentencing.

(*See* ECF Nos. 1 and 3.)

Shortly after Jones's § 2255 motion was filed, this Court entered an order (ECF No. 8) directing the respondent to answer, plead, or otherwise respond to the motion. Rule 5, Rules Gov'g § 2255 Cases. The government has filed its answer, asserting that Jones is not entitled to relief on any of the grounds asserted. (ECF No. 30.)

## III.    Standard of Review

To be entitled to relief, a prisoner who moves to vacate her sentence under § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the Court was without jurisdiction to impose such sentence, that the sentence was in excess of the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. To prevail on a § 2255 motion, a movant "must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of § 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A movant can prevail on a § 2255 motion

alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotation marks and additional citation omitted)).

As a general rule, any claims not raised on direct appeal are procedurally defaulted and may not be raised on collateral review unless the movant shows "(1) 'cause' excusing [the] procedural default, and (2) 'actual prejudice' resulting from the errors," *United States v. Frady*, 456 U.S. 152, 168 (1982) (citations omitted), or demonstrates that he is "actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citations omitted). A claim of ineffective assistance of counsel, however, is not subject to the procedural-default rule. *Massaro v. United States*, 538 U.S. 500, 504 (2003). An ineffective-assistance claim may be raised in a collateral proceeding under § 2255 regardless of whether the movant could have raised the claim on direct appeal. *Id.*

IV.     **Whether a Hearing Is Required**

A prisoner who files a motion under § 2255 challenging a federal conviction is generally entitled to "a prompt hearing" at which the district court is to "determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. The hearing is mandatory "unless 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Fontaine v. United States*, 411 U.S. 213, 215 (1973) (quoting 28 U.S.C. § 2255(b)). Thus, "no hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

Rule 4(b) of the Rules Governing § 2255 Proceedings provides that if it plainly appears from the face of the § 2255 motion, exhibits, and prior proceedings that the petitioner is not entitled to relief, the judge shall make an order for its summary dismissal. Upon consideration of the original motion and supporting memorandum, the government's response and the underlying factual record, the Court finds that there are no evidentiary issues to be resolved and that an evidentiary hearing is not required. The Court will dispose of the motion as the law and justice require. Rule 8(a), Rules Gov'g § 2255 Cases.

## V.      Analysis and Discussion

### A.      Ground One:  Ineffective Assistance of Counsel

Pursuant to the terms of the plea agreement, Jones waived her right to appeal or to bring any collateral proceedings except with respect to claims related to the voluntariness of the plea, prosecutorial misconduct, and ineffective assistance of counsel.  Her ineffective-assistance claim was thus preserved and is not procedurally defaulted.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the effective assistance of counsel during their criminal proceedings, including during the plea-bargaining process.  *Lafler v. Cooper*,  --- U.S. ----, 132 S. Ct. 1376, 1384 (2012); *Titlow v. Burt*, 680 F.3d 577, 586 (6th Cir. 2012).  To make out a claim of ineffective assistance of counsel, the movant must show both that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defendant.  *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984).  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Id.* at 686.

In *Strickland*, the Supreme Court cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and must avoid the "second-guess[ing of] counsel's assistance . . . , [as] it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  *Strickland*, 466 U.S. at 689.  In order to avoid "the distorting effects of hindsight," a reviewing "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'"  *Id.* (citation omitted).

Moreover, in evaluating the prejudice prong, courts must be mindful that "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."  *Strickland*, 466 U.S. at 693.  Indeed, "[v]irtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding."  *Id.* (citation omitted).  Rather, a defendant "must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Jones alleges that Stephen Grace, her former counsel, rendered constitutionally ineffective assistance by failing to turn over evidence to the United States that would have affected the plea-bargaining proceedings by reducing her contemplated sentencing range and the amount of restitution owed. Jones insists that the withheld evidence includes a "log" of patient files and actual patient files that belonged to Merrilee Healthcare, LLC, a company that was owned and operated by Jones. The movant further alleges that the evidence in question would have called into doubt the factual basis for the charges of health-care fraud and money laundering. (ECF No. 3, at 5.) As discussed above, to prevail on her claim, Jones must establish both that Grace's performance fell below an objective standard of reasonableness and that she was prejudiced by the deficient performance, that is, that there is a reasonable probability that, but for Grace's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

In its response to this claim, the United States submits and relies upon the affidavits of attorneys Grace and Cynthia Fort, who was Jones's attorney at the time she entered her plea of guilty and at the sentencing hearing. In his affidavit, Grace states that he was first engaged by Jones in March 2008 to represent her in connection with a subpoena *duces tecum* that had been served on her and Merrilee Health Care. Grace's engagement was limited to representing Jones up to the point that an indictment was returned against her, formally initiating criminal charges. (Grace Affidavit, ECF No. 32-2, at ¶ 2.) In preparing to respond to the subpoena, Grace directed Jones to gather up and deliver to him all documents that were in any way responsive to the subpoena. Jones delivered to Grace's office a laptop computer, voluminous files and records relating to Merrilee Health Care, and two or three metal filing cabinets that were partially full of files. (*Id.* ¶ 3.) After meeting with Jones several times to review the records, Grace coordinated with government investigators to deliver to the government all documents, including those maintained in electronic format on the laptop computer, that were responsive to the subpoena. Grace states: "I produced to the government every document provided to me by Ms. Jones that was within the scope of documents requested in the subpoena. I do not have any of Ms. Jones' or

Merrilee Health Care, Inc.'s 'logs' or patient files in my possession, and I did not retain any such documents after producing all of Ms. Jones' documents and files to the government." (*Id.* ¶ 5.) Grace requested that Jones remove the empty filing cabinets from his office after the production, but they remained in his office until Grace delivered them to attorney Quentin White's office near the end of Grace's representation of Jones. (*Id.* ¶ 6.)

Attorney Grace further states that, in addition to representing Jones in connection with the subpoena, Grace met several times with Assistant United States Attorney ("AUSA") Matthew Everitt in an attempt to negotiate a resolution of the issues involving Jones and Merrilee Health Care. In accordance with Jones's directive, Grace attempted to negotiate a civil resolution of the issues, pursuant to which Jones and Merrilee Health Care would agree to pay a civil fine and some amount of restitution. The government was not responsive to these overtures, and Grace explained that fact to Jones on "numerous occasions." (*Id.* ¶ 7.) Grace also discussed with his client "the government's view of the case as related to [him] by AUSA Matthew Everitt and [his] views and concerns about Ms. Jones' position and exposure in the event." (*Id.*)

Thereafter, Grace's ability to communicate with Jones deteriorated, and he recommended to her that she find replacement counsel. In January 2010, Jones engaged Quentin White. In May 2010, she engaged Cynthia Fort. Grace was permitted to withdraw as counsel in October 2010. (*Id.* ¶ 8.)

In her affidavit, Cynthia Fort states that, in fact, she did turn over to AUSA Everitt "additional files upon discovering them in a cabinet provided by Mr. Grace." (ECF No. 32-1, at ¶ 2.) However, she also states that the reduction in the restitution amount (from the approximately $1.2 million the government initially claimed was owed to the $654,653.87 ultimately agreed upon) was "due to good faith negotiations and a little creativity on Mr. Everitt's and [Fort's] part." (*Id.*) Fort does not identify what types of files she turned over, and her affidavit suggests the files were located in the filing cabinets that Grace had delivered to Quentin White. It is not also clear when Fort discovered or disclosed these files.

To the extent Jones intends to claim that Grace's performance was deficient insofar as he did not discover and turn over to the government the files that Fort later discovered, Fort's affidavit makes it clear that the failure to produce the files sooner did not have an adverse effect on Jones's sentence or the restitution amount. Thus, even if the Court presumes that Grace's performance was deficient insofar as

he did not turn these documents over to the government during the initial response to the subpoena,[1] there is no evidence in the record from which the Court could conclude that this deficiency in any way prejudiced Jones.

If Jones intends to allege that Stephen Grace remains in possession of additional documents and a "log" that he was obligated to turn over to the government in response to the subpoena, and that the failure to disclose these documents adversely affected Jones's interests in the criminal proceeding, Grace's affidavit establishes that he did not retain any documents related to the proceedings against Jones. Moreover, Jones's assertions to the contrary are purely speculative and do not create a need for an evidentiary hearing on this issue. *See Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008) ("[T]he court is not required to hold an evidentiary hearing if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."); *see also United States v. Aiello*, 814 F.2d 109, 113–14 (2d Cir. 1987) ("To warrant plenary presentation of evidence, the application must contain assertions of fact that a petitioner is in a position to establish by competent evidence. . . . Whether there is a genuine issue of material fact depends upon the sufficiency of those factual allegations. Airy generalities, conclusory assertions and hearsay statements will not suffice because none of these would be admissible evidence at a hearing."). In particular, the Court observes that Jones does not describe what documents are missing, how these documents were responsive to the subpoena, or what they might have proved.

In sum, because the movant has not carried her burden of showing that she was prejudiced by any purported deficiency on the part of her former attorney, Stephen Grace, she is not entitled to relief on the basis of this claim.

### B. Count Five: The Voluntariness of Jones's Plea and Waiver of Rights

In Count Five of her motion, Jones asserts, in essence, that her constitutional rights were violated because she was not mentally sound at the time of sentencing, and she was deprived of the right to an examination by a competent psychiatrist prior to sentencing. Construing this claim very liberally, as is appropriate in the case of a *pro se* motion, the Court understand Jones to be asserting a challenge to the

---

[1] There is no evidence in the record that gives rise to an inference that these late-discovered documents were actually responsive to the subpoena or material to Jones's guilt, sentence or the restitution amount, and thus no basis for concluding that Grace's performance was deficient.

voluntariness of her plea and her waiver of her right to bring a direct appeal or a collateral challenge to her conviction and sentence on the basis that her plea was not voluntary because she was mentally incompetent to enter a plea or to stand for sentencing.  As stated above, one of the exceptions to the waiver of rights contained in the plea agreement was that Jones retained the right to challenge her sentence on the grounds that the plea was involuntary.

A guilty plea is constitutionally valid only to the extent that it is "voluntary" and "intelligent." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)).  In this case, Jones alleges that she had a "nervous breakdown" after Fort informed her that any plea agreement would likely require some jail time.  According to Fort, Jones underwent "months of therapy and proper medication" before her attorney and her health-care professionals "felt she was competent to move forward and resolve the case."  (Fort Aff., ECF No. 32-1, at ¶ 6.)  Fort also states, based on her observation of Jones' behavior and demeanor at the time of sentencing, that Jones by then had "regressed" emotionally and appeared to be overwhelmed.  (*Id.* ¶ 6.)  In her memorandum in support of her § 2255 motion, Jones avers that, although she admitted at the sentencing hearing that she understood where she was and the actions against her, she "could not adequately defend [herself] at that time."  (ECF No. 3, at 13.)  She also asserts that the Court acted unreasonably in refusing to consider Jones's mental condition during sentencing, and that Judge Haynes should have ordered a competency examination to determine whether Jones was competent to give a guilty plea on July 22, 2011.  Jones also claims that she had a due-process right under the Fifth Amendment to have a psychiatric evaluation where "sanity is likely to be a significant factor."  (ECF No. 3, at 15.)  She appears to contend that her Fifth Amendment right to be examined by a competent psychiatrist was violated because, instead, she received treatment from a Licensed Clinical Social Worker and a Nurse Practitioner.

Notwithstanding these allegations, Jones's general claim of involuntariness as to the plea is belied by the record in this case.  In the petition to enter a plea of guilty, Jones represented she had read and discussed the indictment with her attorney and understood the charges against her, that she had told her lawyer all the facts in her possession concerning the matters mentioned in the indictment, that she had thoroughly discussed the elements of the claims and the government's case against her, and the maximum charges for the counts to which she intended to plead guilty.  She represented that her attorney

had estimated that the guidelines range in her case would be a prison term of 33 to 41 months, but she understood this was only an estimate and that the Court was not bound by that estimate. She further represented that she offered her plea "freely and voluntarily and of [her] own accord" and that she was not under the influence of drugs or alcohol in entering the plea. (Case No. 3:09-cr-180, Plea Petition ¶ 11, ECF No. 47, at 4.)

Similarly, in the plea agreement itself, Jones agreed that she fully understood the nature and elements of the crimes with which she had been charged, that she was voluntarily entering a plea of guilty as to two counts of the eleven-count indictment, and that she agreed to the entry of a forfeiture judgment. In signing the agreement, Jones expressly agreed to the following statement:

> I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending indictment. Further, I fully understand all rights with respect to the provisions of the Sentencing Guidelines that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this Plea Agreement, and I voluntarily agree to it.

(Case No. 3:09-cr-180, Plea Agreement ¶ 30, ECF No. 47, at 19.) Jones's signature appears just below this paragraph.

Further, during the plea hearing, Judge Haynes thoroughly reviewed with Jones her constitutional rights, the maximum penalties provided by law, the nature and terms of the plea agreement, and the consequences of the plea agreement. The Court made specific inquiry into whether Jones was knowingly and voluntarily changing her plea to guilty and whether she was competent to do so:

Q.      Are you taking any medication of any kind?

A.      Yes, sir.

Q.      What kind of medicine are you taking?

A.      I'm taking Valium, Luprine, Depro injections, I'm taking Abilify, and Pristiq.

        MS. FORT:  Your Honor, if I may offer an explanation, please.

        THE COURT:  Well, at this point I have to get it from her.

        MS. FORT:  Okay.

        THE COURT:  All right.

BY THE COURT:

Q.      Now, what are you taking these medications for?

A.      Post-traumatic stress disorder.

Q.      Are all of the medications for that condition?

A.      The Luprine injections are for abdominal tumors, and I'm scheduled for surgery on the 18th of this month.

Q.      Do those medications affect your ability to think or understand?

A.      No, sir.

Q.      Have you understood everything I've said to you thus far?

A.      Yes, sir.

Q.      Where are you sitting right now?  Where are you sitting at this very moment?

A.      In the courtroom, 859.

Q.      And what are you here to do?

A.      (Respite.)

Q.      What are you here to do today?

A.      I'm here to plead guilty.

Q.      And what do you understand you are pleading guilty to?

A.      One count of health care fraud and one count of money laundering.

THE COURT:    All right.  Does either counsel question the defendant's competence to enter a plea, either side?

MS. FORT:  No, Your Honor.

MR. EVERITT:  No, sir.

THE COURT:  All right.  The Court finds the defendant competent to enter a plea.

(Case No. 3:09-cr-180, Plea Hr'g Tr. 5:25–7:17, ECF No. 67.)

Jones also testified that she understood each of the rights she waived by pleading guilty and what elements the government would have to establish in order to prove her guilty of the charges to which she pleaded guilty.  She verbally confirmed, under oath, that she had gone over both the plea petition and the plea agreement with her lawyer "[p]age for page" and "[l]ine for line" (*id.* at 16:15–22), and that there was no part of either document that she did not understand or that she had questions about.  Jones stated that she was completely satisfied with the services provided by her attorney at that time, Cynthia Fort, and that she had not been coerced in any way by the government or otherwise into pleading guilty.  She specifically stated that the government had not promised her anything other than what was in the plea agreement. (*Id.* 19:1–5.)

Based on this extensive colloquy, Judge Haynes concluded that there was a factual basis for the plea, that Jones was competent to enter the plea and had done so knowingly and voluntarily, and that she had effective assistance of counsel in submitting the plea. (*Id.* 22:24–23:1.) Judge Haynes even went so far, prior to the conclusion of the hearing, to confirm that Jones did not have second thoughts about waiving her rights and pleading guilty, and she did not want to change her mind. (*Id.* 23:22–24–5.)

A plea colloquy is a solemn event and "dispositions by guilty pleas are accorded a great measure of finality." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977). Because courts must be able to rely on a defendant's statements during a plea colloquy, "allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" *United States v. McMaster*, 403 F.3d 216, 221 (4th Cir. 2005) (collecting cases). Here, Jones informed the Court, under oath, that her plea was voluntary, she understood the terms of the agreement, and she had discussed the terms of her plea with counsel. It is clear to the undersigned that the plea agreement and plea petition were entered into knowingly and voluntarily.

More importantly, there is no evidence from which it might be concluded that Jones was incompetent to enter into a plea agreement. The competency of a defendant to enter a guilty plea is subject to the same standard as that used to determine the competency to stand trial, meaning that the defendant must have sufficient present ability to consult with her lawyer in a meaningful way and have a "rational and factual understanding of the proceedings against [her]." *United States v. Godinez*, 509 U.S. 389, 396 (1993). Entry of a guilty plea by an incompetent defendant violates procedural due process and a court has the obligation to *sua sponte* make an inquiry when there is reason to doubt a defendant's competency. *Drope v. Missouri*, 420 U.S. 162, 171–72 (1975). In this case, Judge Haynes quizzed Jones thoroughly on the issue of whether the medications she was taking affected her ability to think or to understand, and asked questions geared toward establishing that Jones knew where she was, why she was there, the exact nature of the charges to which she was pleading guilty, the possible sentences that might be imposed as a result, and the rights she waived as a result of pleading guilty. As set forth above, at the conclusion of the hearing, the Court reconfirmed that Jones did not regret or second-guess her decision to plead. The Court also asked Jones's counsel and counsel for the government whether they

questioned the defendant's competence to enter a guilty plea and both responded that they did not.  The Court then made a finding, based upon Jones's responsiveness to the questions asked of her and the Court's observations of her, that Jones was competent to plead guilty.  Judge Haynes' factual finding in that regard is fully supported by the record.

The fact that Jones had been diagnosed with post-traumatic stress disorder and was on medication at the time of the plea hearing and the sentencing hearing does not imply mental incompetence.  The presence of a disease or condition (including post-traumatic stress disorder), is not the test for competency.  *United States v. Powell*, 42 F. App'x 565, 568 (4th Cir. 2002).  Instead, the question is whether the defendant can effectively and rationally communicate with his counsel with a reasonable degree of rational understanding, and has a rational as well as factual understanding of the proceedings against him.  *Dusky v. United States*, 362 U.S. 402, 402 (1960); *Woodley v. Bradshaw*, 451 F. App'x 529, 537 (6th Cir. 2011).  As set forth above, the record before the Court, including Jones's own statements under oath, shows that Jones was competent at the time she entered her plea, she understood what was happening, and she voluntarily chose to plead guilty.  While she may have been depressed and even "overwhelmed," this does not prove that she was mentally incompetent.  *See United States v. Williams*, 262 F. App'x 165, 173--74 (11th Cir. 2008) (even though defendant was confirmed to have suffered from post-traumatic stress disorder, competency hearing was not necessary where there was no medical report or opinion indicating that the defendant was incompetent to stand trial and no evidence that the defendant had ever behaved irrationally); *Nowak v. Yukins*, 46 F. App'x 257, 259–60 (6th Cir. 2002) (even though medical records indicated defendant suffered from significant depression, they did not reflect she was mentally incompetent).

The Court finds that Jones was competent to enter the guilty plea and that she entered the plea, and the plea agreement, knowingly and voluntarily.  She has not established that she was entitled to a competency exam or to leniency in sentencing as a result of her mental condition.  Jones is not entitled to relief on the basis of the claims set forth in Ground Five of her motion.

With respect to Jones's allegations that she was denied her "right" to an examination by a qualified psychiatrist and that the Court abused its discretion in failing to take her fragile mental condition into account in imposing the sentence, these claims were waived by the waiver language in the plea

agreement. Moreover, even if the claims were not waived, review of them is foreclosed by Jones's default: First, there is no evidence in the record that she ever requested to be examined by a psychiatrist at any time prior to sentencing; moreover, she failed to raise either of these claims in a direct appeal. As a result, the claims are defaulted. *United States v. Frady*, 456 U.S. 152, 168 (1982)); *see also Capaldi v. Pontesso*, 135 F.3d 1122, 1124 (6th Cir. 1998) ("An application under § 2255 . . . should not be considered a substitute for direct appeal."). She can overcome the default and raise the claim in a § 2255 proceeding only if she shows "either that (1) [she] had good cause for [her] failure to raise such arguments and [she] would suffer prejudice if unable to proceed, or (2) [she] is actually innocent." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). Although Jones broadly states in the introductory section of her memorandum that "[i]t is the intent of [her] motion to show both 'cause' and 'actual prejudice'" sufficient to overcome default (ECF No. 3, at 1), she does not present any specific argument related to cause in the body of her memorandum. She was clearly aware of the alleged deprivation of a psychiatric evaluation and the Court's alleged failure to take her mental condition into account on the date of her sentencing, and she offers no reason for her decision not to raise the issues in a direct appeal. Nor does she raise a colorable claim of actual innocence. Jones's claims relating to her mental state are therefore non-reviewable on the basis that they are procedurally defaulted.

### C.    Count Two: Judicial Bias

Jones alleges that the undersigned should have recused himself from presiding over her case because "[p]roof of personal bias is evident." (ECF No. 1, at 5.) In her memorandum, she details her husband's political connections, based upon which she believes that "it is not feasible [for her to] receive neutrality in sentencing nor objectivity" within the Middle District of Tennessee. (ECF No. 3, at 7.) She points out that Judge Haynes recused himself, claims that Judge Trauger recused herself,[2] and asserts that this Court should have recused himself because "his father-in-law was instrumental in his getting his appointment to the Middle District bench" and "his father-in-law and [Jones's] husband are staunch

---

[2] Judge Trauger technically did not recuse herself. The case was improperly assigned directly to her by the Clerk as a result of Judge Haynes' suggestion that the case was related to another case then pending before Judge Trauger. Judge Trauger simply entered an order returning the case to the Clerk for random reassignment. (Case No. 3 :09-cr-180, ECF No. 60.)

political rivals." (*Id.* at 8, 7.)  Jones offers no other basis for suggesting that her sentence was affected by judicial bias.

The Court will presume that Jones did not waive her ability to raise the issue of judicial bias in signing the plea agreement and entering her plea before the case was assigned to the undersigned. Notwithstanding, her failure to object or to file a motion to recuse prior to her sentencing, and her failure to raise the issue in a direct appeal resulted in a double default of the issue, which forecloses the possibility of her raising the claim now.  *Frady*, 456 U.S. at 168.  She can overcome the default and raise the claim in a § 2255 proceeding only if she shows either cause and prejudice, or actual innocence. *Bousley*, 523 U.S. at 622.  As stated above, Jones does not present any specific argument related to cause anywhere in her motion or memorandum in support thereof.  She was clearly aware of the alleged judicial bias on the date of her sentencing, and she offers no reason for her decision not to raise the issue in a direct appeal.  Nor, again, does she raise a colorable claim of actual innocence.  Jones's claim of judicial bias is therefore non-reviewable on the basis that it is procedurally defaulted.

Even if this issue were not procedurally defaulted, to state a due-process claim of judicial bias, a defendant must show either that actual bias existed, or that an appearance of bias created a presumption of actual bias.  *Anderson v. Sheppard*, 856 F.2d 741, 746 (6th Cir. 1988).  *But see Railey v. Webb*, 540 F.3d 393, 400 (6th Cir. 2008) (recognizing that a claim of the appearance of bias is not always of constitutional significance).  Jones merely alleges that the possibility of bias existed because her husband and this judge's father-in-law are political adversaries.  She does not explain how this attenuated connection creates the appearance of bias.  She does not allege that this judge has any relationship, adversarial or otherwise, with her husband, nor does she identify any specific comments or statements made by the Court that would indicate actual bias.  Jones cannot meet her burden of showing either actual bias or an appearance of bias with speculation or on the basis that she is unhappy with court rulings.  Jones is not entitled to § 2255 relief on the grounds of judicial bias.

### D.      Ground Three:  Prosecutorial Misconduct

The Court understands Jones to claim under this ground for relief that AUSA Everitt breached the plea agreement, as a result of which she pleaded guilty under a false premise, which voids the plea

agreement. (*See* ECF No. 3, at 9.)

Jones alleges that Lee Thelma Jones, Candyce Jones's mother, was sentenced on July 21, 2011 to six months of home confinement in case number 3:10-cr-274. Judge Campbell, during sentencing, allegedly instructed AUSA Everitt that this ruling was not to affect any other cases. Jones asserts that AUSA Everitt was so "upset" about the leniency of that sentence that it adversely affected his behavior during Jones's sentencing the next day. She claims he had agreed verbally to "sit quietly and say nothing during the sentencing while the attorney for the defendant asked for a downward departure." (ECF No. 3, at 10.) Although he had abided by his word and said nothing during Thelma Lee Jones's sentencing, during Candyce Jones's sentencing, he referenced Thelma Lee Jones's sentence and argued that an example needed to be made of Candyce Jones. In her affidavit, Cynthia Fort states that she agrees with Jones's assertions, and further adds that she was "stunned and furious that AUSA Everitt disregarded our agreement that he would remain silent at sentencing and that he argued so vehemently. . . . It was very obvious that [Jones's] sentencing was adversely affected by the lenient sentence Judge Campbell imposed on her mother the previous day." (ECF No. 32-1, at ¶¶ 4, 5.)

As an initial matter, though it is clear that Jones did not waive the ability to challenge her plea or sentence on the grounds of prosecutorial misconduct, the claim is procedurally defaulted because she did not raise the claim in a direct appeal. *Frady*, 456 U.S. at 168. Jones did not seek direct review of her sentence, and she offers no "cause" for failure to do so, nor does she raise a colorable claim of actual innocence. Jones's claim of prosecutorial misconduct is therefore non-reviewable on the basis that it is procedurally defaulted.

Even if the claim were not defaulted, Jones would not be entitled to relief on the basis of this claim. The parties' written plea agreement does not contain an agreement by the government to remain silent during Jones's sentencing hearing. To the contrary, the plea agreement provides that each party was free to recommend whatever sentence it deemed appropriate. (Case No. 3:09-cr-180, Plea Agreement ¶ 11, ECF No. 47, at 15.) Further, the plea agreement contemplates that the government would "make known all matters in aggravation and mitigation relevant to the issue of sentencing." (*Id.* ¶ 18.) And finally, the plea agreement expressly states that "no promises, agreements, or conditions have been entered into other than those set forth in [the agreement], and none will be entered into unless

memorialized in writing and signed by all the parties . . ." (*Id.* ¶ 29.)  Jones has not presented evidence of the existence of a written addendum to the parties' plea agreement requiring the government to remain silent during the sentencing hearing.  She therefore cannot establish a breach of the plea agreement.

Moreover, even if Jones were entitled to bring a claim based on AUSA Everitt's breach of a verbal agreement not to contest Jones's attorney's argument in favor of a variance under 18 U.S.C. § 3553(a), Jones cannot demonstrate a substantive violation of her rights, because the sentence imposed was within the range, and in fact toward the lower end of the range, contemplated by the plea agreement and estimated as the probable range by her attorney.  *Cf. United States v. Keller*, 665 F.3d 711, 714–15 (6th Cir. 2011) (finding under plain-error review that a defendant claiming breach of a plea agreement by the government must show prejudice by demonstrating that the breach affected his substantial rights).

For all these reasons, Jones is not entitled to relief on the basis of this claim.

### E.     Ground Four:     That the Sentence Was Substantively and Procedurally Unreasonable

In entering into the plea agreement, Jones expressly waived her right to appeal or to bring any collateral proceedings except with respect to claims related to the voluntariness of the plea, prosecutorial misconduct, or ineffective assistance of counsel.  Specifically regarding sentencing, the plea agreement states:

> Defendant is aware that 18 U.S.C. § 3742 generally affords a defendant the right to appeal the sentence imposed.  Acknowledging this, defendant knowingly waives the right to appeal any sentence within or below the guideline range associated with the Recommended Offense Level when combined with defendant's criminal history category as determined by the Court.  Defendant also knowingly waives the right to challenge the sentence imposed in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255. . . .

(Case No. 3:09-cr-180, Plea Agreement, ECF No. 47, at ¶ 22.)  There is no contention in this case that the sentence imposed was outside the guideline range associated with the Recommended Offense Level (20).

It is well established that a criminal defendant may lawfully waive any right, statutory or constitutional, in a plea agreement with the government so long as the defendant's waiver is both knowing and voluntary.  *United States v. Coker*, 514 F.3d 562, 573 (6th Cir. 2008).  The Court has already determined that the plea agreement as a whole, including the waiver of the right to challenge the sentence, was knowing and voluntary.  Because Jones waived her right to challenge her sentence, she is

not entitled to relief on the basis of her claim that her sentence is substantively and procedurally unreasonable. Even if Jones had not waived her right to challenge her sentence in the plea agreement, the claim would be defaulted because she failed to raise it in a direct appeal. As discussed above, Jones can raise a defaulted claim in a § 2255 proceeding only if she shows either cause and prejudice, or actual innocence. She has not done so with respect to this claim either.

Because it is non-reviewable, Jones is not entitled to relief on the basis of this claim.

## VI.    Conclusion

For the reasons set forth herein, the Court concludes that Jones's motion under § 2255 is without merit. The motion will therefore be denied and this matter dismissed.

Pursuant to Rule 11 of the Rules Governing § 2255 Proceedings, the Court must, at the time of entry of the final order denying relief, either issue or deny a certificate of appealability ("COA"). The Court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Perkins v. McQuiggin*, 670 F.3d 665, 668 (6th Cir. 2012). A "substantial showing" is made when the movant demonstrates that "'reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks and citations omitted). "[A] COA does not require a showing that the appeal will succeed." *Id.* at 337. Courts should not issue a COA as a matter of course. *Id.*

Under that standard, the Court finds that the movant has failed to make a substantial showing of the denial of a constitutional right with regard to any of the grounds for relief set forth in her motion and supporting memorandum of law. The Court will therefore decline to issue a COA.

An appropriate order is filed herewith.

Kevin H. Sharp
United States District Judge